**MONDAY et al. v. CLYNES.**

No. 11942.

United States Court of Appeals
Sixth Circuit.

June 5, 1954.

Wilbur W. Piper, Foster D. Arnett, Knoxville, Tenn., Wilbur W. Piper, Foster D. Arnett, Fowler, Long & Fowler, Knoxville, Tenn., on brief, for appellants.

William E. Badgett, Knoxville, Tenn., Jerome G. Taylor, Taylor & Badgett, Knoxville, Tenn., on brief, for appellee.

Before SIMONS, Chief Judge, MILLER, Circuit Judge, and FORD, District Judge.

SIMONS, Chief Judge.

The appellants complain of a judgment obtained by the appellee for the death of her husband in an automobile collision in Tennessee. The case was tried to a jury which returned a verdict for the appellee in the following terms: "We render a verdict in favor of the plaintiff and our decision and premises is based purely and wholly on the theory of the Last Clear Chance. It was unanimous. Damage is assessed at $12,-500.00." The principal and controlling issue is whether, upon the evidence of record, the court should have submitted the case to the jury upon the Last Clear Chance Doctrine and, if so, in the form of its instructions thereon.

The accident occurred while the decedent was driving a Buick car on U. S. Highway 70, in an easterly direction, between Ozone, Tennessee and Rockwood when his car skidded on a right curve because of the slippery condition of the road and collided with an unloaded dump-truck of the trucking company, operated by its employee, appellant Ross, in an opposite direction and up a 6% grade on its right side of the road. The Buick started to skid around the curve, approximately at the top of the grade. Ross saw the Buick come around the curve and could see it skidding across the center line of the road. He applied his brakes, causing the truck to skid but kept it continuously upon the right side of the road. The Buick was crosswise on that side when the collision occurred. There were four occupants of the Buick other than Clynes.

There was conflicting evidence as to the speed of the respective vehicles as to the distance of the truck from the Buick when the Buick's skid began, as to the point from which the truck driver could see the Buick skidding upon the wrong side of the road, and as to the extent to which each vehicle had decelerated under the operation of its brakes. There was evidence that at the point of collision the filled shoulder on the truck's side of the road was too narrow for safely leaving the pavement, but that the shoulder widened to 18 feet for a distance of 180 feet below the point of the accident, and became 20 to 30 feet further down. There was evidence that the Buick, at the point it began to skid around the curve, could have been perceived from a vehicle approaching in a westerly direction from the bottom of the grade a distance of approximately 500 feet. The accident occurred in bright daylight at about noon.

The fact issues having been fairly submitted to the jury, we must, under familiar rules, accept the evidence in the light most favorable to the plaintiff, in view of the verdict in her favor. We do not pass upon the weight of evidence or the credibility of witnesses. Ross, the truck driver, testified that he first saw the Buick when it was approximately 160 feet away but there is cumulative evidence that when the Buick came skidding around the curve the truck was at a point indicated on the map, in evidence, which was over 300 feet away and, if believed, was moving along the wider portions of the shoulder extending along the truck's side of the highway.

The appellants' principal contention is that the decedent's negligence in coming around the curve, at high speed,

upon a slick pavement, was continuous to the point of collision and so constituted contributory negligence precluding recovery. This invites consideration of the scope of the Last Clear Chance Doctrine, as developed in Tennessee. It has been said that the doctrine had its origin in the English case of Davies v. Mann, 10 M & W 546 (1842), and was first applied to a situation where a plaintiff had negligently put himself into a perilous position from which he could not escape, and a defendant would be liable if thereafter he had a clear chance to avoid injury by using due care. Tennessee recognizes the doctrine sometimes referred to by its courts as the doctrine of "discovered peril" with its application limited to cases where the peril is discovered by the defendant and the plaintiff is physically unable to escape therefrom. Kansas City, Memphis & Birmingham Railroad Co. v. Williford, 115 Tenn. 108, 122, 88 S.W. 178; Memphis St. Railroad v. Roe, 118 Tenn. 601, 610, 102 S.W. 343; Todd v. Cincinnati, N. O. & T. P. Railroad, 135 Tenn. 92, 185 S.W. 62, L.R.A.1916E, 555.

■ Ross admitted that he saw the Buick skidding out of control, and there being conflict in the evidence at exactly what point he must have seen it, and the jury having resolved this conflict in favor of the plaintiff, we must accept its finding. There is no doubt upon this record that the decedent was in a position of peril from which he could not extricate himself.

The appellants' theory developed by requests for instructions and, by argument here, is that the decedent's negligence continued from the time he skidded at the curve until the point of collision and, so, a proximate cause of the accident. Assuming negligence, as we must, on the part of the decedent in entering the curve at too high a speed, we are unable to accept the argument that such negligence continued to the point of collision. This would fly in the face of normal human behavior, general experience, and the instinct of self preservation. The appellants point to no act of the decedent to continue the skid or omission of any reasonable effort to extricate himself. The hazard created by his negligence continued, but that is not to say that the negligence itself continued. This distinction is recognized by the Tennessee court in Shortway Lines v. Thomas, 1951, 34 Tenn.App. 641, 650, 241 S.W.2d 875, 879, wherein it said: "It requires no argument to demonstrate that a person in a skidding automobile on a slick pavement falls within the category of persons caught in a peril from which escape is likely to be impossible, especially if there is other traffic in striking distance * * *. A situation most favorable to the application of the doctrine is in cases where actual knowledge by defendant of the plaintiff's extremity concurs with plaintiff's physical inability to extricate himself from the danger." Cases cited by the appellants where plaintiffs have been denied recovery where their negligence was concurrent or simultaneous with the alleged negligence of the defendant are not in point because they involve situations in which the plaintiff was not in a position of peril from which he could not escape. Such was the situation in our case of Evansville Container Corporation v. McDonald, 6 Cir., 132 F.2d 80. In such cases, the doctrine of Last Clear Chance has no application.

■ It was within the competence of the jury to accept evidence that the truck driver was a sufficient distance from the skidding automobile to have avoided the accident, either by stopping his truck further down the hill or going off the pavement upon the wider sections of the shoulder. His failure to do so was, therefore, the proximate cause of the collision and the death of the decedent, notwithstanding the latter's earlier negligence. There was no error in refusing to grant requests to charge, based upon a view of the law that the decedent's negligence continued to the point of impact.

The judgment is affirmed.